UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., *Plaintiff*, <br><br> v. <br><br> PISTOL PETE'S BAR & GRILL LLC AND PETER W. ODDO, SR., *Defendants*. | No. 3:18-cv-00245 (JAM) |

**ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Plaintiff J & J Sports Productions, Inc., is a corporation that distributes and licenses sporting events to commercial locations. Plaintiff held the exclusive distribution rights to the broadcast of *Floyd Mayweather, Jr. vs. Manny Pacquiao*, a boxing match that took place on May 2, 2015. Plaintiff has sued defendants—a bar/restaurant and its owner—under 47 U.S.C. §§ 553 and 605 for unlawfully intercepting plaintiff's broadcast of the boxing match and exhibiting it to customers of the bar/restaurant without plaintiff's authorization.

Defendants have entirely failed to plead or otherwise defend against plaintiff's complaint, and their defaults were entered on May 30, 2018. Doc. #12. Plaintiff has now moved for default judgment and seeks statutory damages in the amount of $10,000, enhanced statutory damages in the amount of $40,000, and an award of attorney's fees and costs. In support of its motion, plaintiff has submitted affidavits, a licensing agreement, advertisements, a report documenting defendants' broadcast of the event, and a billing record of attorney's fees and costs. After review of all materials submitted by plaintiff, I conclude that default judgment shall enter in the amount of $9,350 with an additional $5,687.50 of attorney's fees and $615 of costs.

## BACKGROUND

Plaintiff is a California corporation specializing in licensing and promoting closed-circuit sporting event broadcasts (pay-per-view programming) to restaurants, bars, casinos, and other such establishments. Plaintiff held the exclusive distribution rights to the boxing match *Floyd Mayweather, Jr. vs. Manny Pacquiao* and all undercard bouts airing May 2, 2015.

Defendant Peter Oddo, Sr. is the sole member and manager of defendant Pistol Pete's Bar & Grill (Pistol Pete's). Defendants did not contract with or pay plaintiff to license the boxing match on May 2, 2015. Nevertheless, defendants accessed the event, charged a $10 cover fee for patrons to view it, and aired the match in their restaurant before between 32 and 38 customers. The event was also advertised on the restaurant's Facebook page.

Plaintiff became aware of defendants' actions through one of the independent auditors it employs to investigate establishments that intercept and exhibit plaintiff's programming without authorization. According to plaintiff, it is not possible to accidentally or mistakenly intercept plaintiff's programming. "Signal pirates" intentionally access the programming without contracting with plaintiff, using methods like acquiring an illegal decryption or descrambling device, splicing a cable signal from a neighbor, or misrepresenting the commercial establishment as a residence in order to pay the residential pay-per-view rate.

Plaintiff filed this action on February 8, 2018, alleging violations of the Communications Act, 47 U.S.C. § 605, and the Cable and Television Consumer Protection and Competition Act, 47 U.S.C. § 553. Plaintiff successfully served defendants on March 12, 2018. Defendants, however, never answered or otherwise appeared in the action, and on May 30, 2018, the Court entered default against defendants. Plaintiff filed an unopposed motion for default judgment on

June 8, 2018. Plaintiff moves for statutory damages in the amount of $10,000, an additional $40,000 in enhanced statutory damages, and an award of attorney's fees and costs.

## DISCUSSION

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotations and citations omitted). Nevertheless, a district court is "required to determine whether the [plaintiff's] allegations establish [the defendants'] liability as a matter of law." *Ibid.* Following such a determination, the district court must also determine the amount of damages to be awarded; to do so, it may conduct a hearing or it may make such a finding on the basis of documentary evidence if damages are ascertainable with reasonable certainty. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

### *Liability*

Plaintiff's complaint alleges that defendants violated 47 U.S.C. §§ 553 and 605. Both of these provisions prohibit the unauthorized reception of cable programming. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129–30 (2d Cir. 1996); *Kingsvision Pay-Per-View Corp., Ltd. v. Keane*, 2006 WL 1704474, at *2–*3 (E.D.N.Y. 2006). Section 553 applies only to cable transmissions, while § 605 applies to both cable and satellite transmissions. *Ibid*. Because plaintiff has elected to pursue damages under § 605 only, I will assess defendants' liability under that section.

Plaintiff's undisputed, unopposed allegations establish defendants' liability for violating 47 U.S.C. § 605. Plaintiff had exclusive distribution rights to the boxing match at issue. Pistol Pete's was not authorized to show the match but did so through one of a number of illicit means

3

on the night of May 2, 2015, airing the event before about 35 restaurant patrons who paid a $10 cover fee. Plaintiff has adequately demonstrated that Pistol Pete's violated 47 U.S.C. § 605.

Plaintiff's allegations are also sufficient to establish the individual liability of defendant Peter Oddo, Sr. "Establishing individual liability under Section 605(a) requires a showing either of contributory infringement, which arises when the individual authorize[d] the violations, or vicarious liability, which arises when the individual had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *See J & J Sports Prods., Inc. v. Tellez*, 2011 WL 6371521, at *3 (E.D.N.Y. 2011). Plaintiff has alleged here that Oddo "was an officer, director, shareholder, member and/or principal of the entity owning and operating the Establishment; [] had a right and ability to supervise the activities of the Establishment; and [] had an obvious and direct financial interest in the activities of the establishment." Doc. #1 at 2–3. This suffices to establish individual liability. *See Tellez*, 2011 WL 6371521, at *3–*4. Accordingly, I conclude that Oddo is individually liable for the violation of 47 U.S.C. § 605.

### *Damages*

An aggrieved party seeking compensation under 47 U.S.C. § 605 may elect to seek either statutory damages (of between $1,000 and $10,000 per violation) or actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I)–(II). If the Court finds that the violation "was committed wilfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may enhance the actual or statutory damages award by an amount up to $100,000. *See* 47 U.S.C. § 605(e)(3)(C)(ii). Here, plaintiff has requested $10,000 in statutory damages and an additional $40,000 in enhanced statutory damages.

4

*Basic statutory damages*

I will first address plaintiff's request for basic statutory damages in the amount of $10,000. While 47 U.S.C. § 605 does not itself detail how to set damages within the statutory range, courts in the Second Circuit have used one of two methods: either an award of about $50 multiplied by the number of patrons who viewed the unauthorized broadcast in the establishment or an award of a flat sum for each violation. *See, e.g.*, *Joe Hand Promotions, Inc. v. Elmore*, 2013 WL 2352855, at *6–*7 (E.D.N.Y. 2013) (collecting cases). Courts tend to use the first method when, as here, there is undisputed evidence of the number of patrons who viewed the unauthorized broadcast. *Id.* at *7. But if that amount is less than the sub-licensing fee that a plaintiff would have received had defendants lawfully paid for the right to show the broadcast, courts have opted for the second method. *See, e.g.*, *J & J Sports Prods., Inc. v. Meson de Colombia, Inc.*, 2010 WL 4791771, at *3 (E.D.N.Y. 2010).

Here, multiplying the number of patrons by $50 would yield damages of $1,750. As indicated by the rate sheet that plaintiff provided, plaintiff would ordinarily have charged defendants $3,000 to broadcast this boxing match, based on the size of the establishment. *See* Doc. #15 at 15 (approximate capacity of establishment is 100 people); *id.* at 30 (indicating a rate of $3,000 for an establishment with 1-100 capacity). In light of the foregoing, the Court finds that an award of basic statutory damages of $3,000 is appropriate.

*Enhanced statutory damages*

Plaintiff also requests $40,000 in enhanced statutory damages, based on defendants' "willful" violation of § 605, committed "for direct or indirect commercial advantage." 47 U.S.C. § 605(e)(3)(C)(ii). The Communications Act specifies that the Court may exercise its discretion to award enhanced damages, up to a maximum of $100,000 for each violation. *Ibid*. When

determining the amount of enhanced damages, courts consider various factors, including: "(1) whether the defendant engaged in repeated violations over an extended period of time; (2) whether the defendant realized substantial unlawful monetary gains; (3) whether the defendant advertised the broadcast; (4) whether an admission fee or food and drink premium was charged; and (5) whether the plaintiff suffered significant actual damages." *Joe Hand Promotions, Inc. v. Trenchard*, 2014 WL 854537, at *4 (D. Conn. 2014). "Courts also consider the statutory objective of deterring future violations of 47 U.S.C. § 605." *Ibid.*

In this case, the violation was indeed willful; defendants never contracted with plaintiff to show the match, and "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Ibid*. But there is no evidence that defendants engaged in repeated violations, that defendants charged a premium on food and beverages, or that plaintiff suffered significant actual damages. Defendants accrued some unlawful monetary gains by charging a cover fee of $10 per patron (amounting to $350 in profits). There is also evidence of very modest advertising of the event on defendants' Facebook page.

In light of the above factors, I conclude that enhanced damages of $40,000 would be excessive. Courts in this circuit often find that, absent any of the above enumerated factors, twice the base statutory damages is sufficient to achieve the deterrence objective of 47 U.S.C. § 605(e)(3)(C)(ii). *See, e.g.*, *Trenchard*, 2014 WL 854537, at *4; *Joe Hand Promotions, Inc. v. La Nortena Restaurant Inc.*, 2011 WL 1594827, at *5 (E.D.N.Y. 2011). In this case, that method would result in enhanced statutory damages of $6,000. In addition, I will add $350 to account for the profits from the cover fee that defendants charged patrons to view the unlawfully broadcast boxing match, making for enhanced damages of $6,350, and total damages of $9,350.

*Attorney's fees*

Plaintiff also seeks an award of attorney's fees and costs. Section 605 of the Communications Act requires that the Court "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605 (e)(3)(B)(iii); *see also Trenchard*, 2014 WL 854537, at *5. "The Second Circuit requires attorneys to submit contemporaneous billing records, documenting the date, hours expended and nature of the work they performed." *Ibid.* (*citing Scott v. City of New York*, 643 F. 3d 56, 57 (2d Cir. 2011)). Plaintiff here includes a billing record for attorney services and requests attorney's fees of $5,687.50 (including 17.5 hours billed at $325 per hour) and costs of $615. I find in light of all the required considerations that this request is reasonable and appropriate.

## CONCLUSION

Plaintiff's motion for default judgment (Doc. # 15) is GRANTED in the amount of $9,350 of damages with an additional $5,687.50 of attorney's fees and $615 of costs. The Clerk of Court shall enter judgment and close this case.

It is so ordered.

Dated at New Haven this 13th day of June 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge